**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FLORENCE DIVISION**

| | |
|---|---|
| **Carol Blackmon and Anthony Oliver,** individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  vs.<br><br>Honda of South Carolina Mfg., Inc.,<br><br>  Defendant. | Civil Action No.  4:04-1254-27<br><br><br>**ORDER APPROVING SETTLEMENT** |

This matter came before the Court on July 15, 2005 for the Court's consideration of final approval of the settlement in this case.  Present at the hearing were Class Counsel, Justin O'Toole Lucey and M. Lee Robertson, and counsel for Defendant Honda of South Carolina Mfg., Inc. ("HSC"), Susan P. McWilliams and James C. Leventis, Jr.  Notice of this hearing to approve the settlement was provided to all class members by mail.

### Background Facts and Procedural History

This matter is a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").  It is brought by two former employees, known as associates at HSC, seeking overtime compensation for time spent changing in and out of uniforms before and after their shifts at the HSC plant located in Timmonsville, South Carolina.  The plaintiff, Carol Blackmon, commenced this action in the Tenth Judicial Circuit in Florence County against the defendant on March 11, 2004.  The case was timely removed to this Court and HSC answered, denying all liability.  Plaintiff Oliver was joined subsequently.  A detailed background of this

litigation and the underlying dispute is set forth in this Court's Order Preliminarily Approving

Settlement, filed on February 22, 2005 (hereinafter referred to as the "Preliminary Order").

A preliminary fairness hearing was previously conducted in this matter on February 2, 2005.

Numerous materials were submitted in support of the plaintiffs' motion, to which HSC consented.

A summary of the preliminarily approved settlement is as follows:

1.      Total Settlement Amount as to associates:  $1,457,750.00.

2.      Attorney's fees and expenses:  $500,000.00.

3.      Class representative compensation:  $2,000.00 each (to be disbursed from funds in

        paragraph 1).

4.      Spot check review budget: $10,000.00 (to be disbursed from funds in paragraph 1).

5.      Administrative expenses of notice to class members to be paid by HSC.

6.      In addition to the funds in paragraph 1, approximately $93,000.00 to be paid to

        persons who were employed at HSC through temporary staffing agencies

        (hereinafter "Temps").[1]

In preliminarily approving the settlement, the Court considered and applied the "Jiffy Lube"

factors.  *In Re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir.1991) (adopting the settlement

approval analysis set forth in *Montgomery County Real Estate Antitrust Lit. v. Jack Foley Realty

Inc.*, 83 F.R.D. 305 (D. Md. 1979)).  Pursuant to *Jiffy Lube*, in determining whether a settlement

should be approved, the reviewing court must focus on a series of factors in the two major

categories of fairness and adequacy.  *See Montgomery*, 83 F.R.D. at 315.  The "fairness" factors

are: 1) the posture of the case at the time settlement was proposed; 2) the extent that discovery has

---

[1]  By making this voluntary payment, HSC did not then, nor now, concede that it is a co-employer with the temporary agencies involved, but is taking this action solely to achieve a final and fair resolution of this issue without further dispute or litigation.

been conducted; 3) the circumstances surrounding the negotiations; 4) experience of counsel in securities (employment) class action litigation. *In Re Jiffy Lube Securities Litigation*, 927 F.2d at 155. The focus of the fairness inquiry is to establish the presence or absence of collusion between the parties, to make sure that the settlement was the result of good faith bargaining at arms length. *Montgomery County Real Estate Antitrust Lit. v. Jack Foley Realty Inc.*, 83 F.R.D. at 316.

The "adequacy" of the settlement is evaluated under the five *Montgomery* factors: 1) the relative strength of the plaintiff's case on the merits; 2) the existence of any difficulties of proof or strong defenses that the plaintiffs are likely to encounter if the case goes to trial; 3) the anticipated duration and expense of additional litigation; 4) the solvency of the defendant; 5) the degree of opposition to the settlement. *Montgomery*, 83 F.R.D. at 316. These factors seek to weigh the likelihood of plaintiffs' recovery on the merits against the amount offered in settlement. *Montgomery*, 83 F.R.D. at 316. While it is necessary for the reviewing court to consider the facts and law of the case, it is not necessary or desirable for the court to "try" the case in determining the adequacy of the settlement. *Id.*

This Court has already applied the *Jiffy Lube* analysis to this settlement, with the information presented to it at that time, and preliminarily approved this settlement, finding it fair, reasonable, adequate, and the result of good faith, arms length negotiations by competent counsel. *See* Preliminary Order, pp. 6-9. The analysis set forth in the Preliminary Order is hereby incorporated by reference. At this time, the Court is revisiting the proposed settlement agreement to consider the class members' reactions to the settlement, to provide a forum for interested persons to provide the Court with input, and to determine whether final approval should be given to the settlement.

**Class Notice and Opt-ins**

Class Counsel and HSC's counsel documented to the Court through filings and oral presentation the efforts and results relating to class notice, opt-ins, and objections. The evidence presented supports final approval of the settlement. The documentation presented to the Court established that over 80% of potential class members had elected to opt in to the settlement, resulting in a relatively low percentage of unclaimed settlement funds. As discussed herein below, there was also an extremely low objection rate (less then one-fifth of one percent), which further weighs in favor of approval of the settlement.

Shortly after preliminary approval, notice to potential class members commenced. On March 8, 2005, approximately 2,700 notices were mailed by HSC at HSC's expense to potential class members. Notices were mailed to approximately 2,200 HSC current and former associates and 500 Temps who had been assigned to HSC during the relevant period. Additionally, HSC made information available to current associates at its facility through meetings held there. Finally, HSC undertook extraordinary attempts to locate potential class members by employing an agent to search for former associates and Temps through Internet search engines and also hiring, at its expense, a private detective to attempt to locate former associates and Temps.

Additional notice to class members was provided through newspaper articles, including one from the Florence Morning News published on March 11, 2005. The core information in this article was picked up by other newspapers and published around the state during the successive days. The settlement additionally received national publication by reports in various employment and class action publications. This publicity assisted the parties in locating additional potential class members who had not yet received a mailed notice. When these individuals learned of the settlement and called HSC or Class Counsel for their opt-in forms, follow up notices were mailed to

them.  In addition, follow up notices were subsequently distributed by HSC as additional potential class members were located.  According to HSC, it has distributed over three thousand notices.

Class Counsel began receiving returned opt-in forms on March 9, 2005, the day after the notices were mailed.  To date, Class Counsel has received in excess of 2,160 opt-in forms and has retained sole custody of the forms once received.  As provided herein, Class Counsel shall electronically file said original opt-in forms as required under the FLSA and the Preliminary Order.  At the time of the hearing, the parties were in the process of adding recently received opt-ins, which Class Counsel represents brings the opt-in total to over 2,200.  This equates to a return rate of eighty-one percent (81%).  The majority (in excess of 1,600) of these opt-in forms were from HSC associates.  In excess of 560 opt-in forms were also received from Temps.

In addition, Class Counsel has received hundreds of calls relating to the settlement from potential class members and has fielded a multitude of questions.  Class Counsel and HSC sent additional notices to potential class members who contacted either Class Counsel or HSC.

As preliminarily calculated by HSC on July 14, 2005, associates have made claim for approximately $1,350,000.00 of the $1,443,750.00 available for associates, leaving unclaimed funds in the amount of $93,750.00.  Pursuant to the settlement agreement, HSC will donate the unclaimed funds to Timmonsville School District 4.  As the recent opt-ins are added and any new opt-ins are received as set forth below, it is understood that the amount of claimed funds may continue to increase and the amount of unclaimed funds may be reduced. Temps have made claims for $93,421.29, which will be paid voluntarily by HSC out of funds over and above the associate settlement funds.[2]  These figures demonstrate tremendous class member approval of the settlement and the direct monetary benefit to class members.

---

[2] The Court specifically commends HSC for its willingness to include Temps in this settlement, which demonstrates to the Court HSC's good faith and deserved reputation as a good corporate citizen in the Forence area and the State.

In stark contrast to the overwhelming number of opt-ins, there have only been four objections by class members and one purported objection by a non-class member. On July 15, Class Counsel filed these objections and the Court heard corresponding arguments. Notably, no objectors appeared at the hearing, despite the mailing of over 3,000 notices. These objections are addressed herein.

First, it should be noted that five individuals filing objections out of a potential class membership of 3000 militates in favor of the settlement. The number of objectors is less then one-fifth of one percent of the potential class. The small number of objectors indicates the class members' approval of the fairness and adequacy of the settlement. *See Montgomery County R.E. Antitrust Lit. v. Jack Foley Realty, Inc.*, 83 F.R.D. at 317-8 (objectors totaling six percent (6%) of the class indicated that the vast majority of class members favored the proposed settlement agreement).

Addressing the substantive objections themselves, the Court finds that they do not warrant rejection of the settlement. There are three substantive objections and they are addressed below.

Objection 1:    Unclaimed funds should not go to Timmonsville School District; rather, they should be divided among the remaining class members. Objector: Ronald Posey

This objection opposed the existence of a *cy pres*. Specifically, Mr. Posey claimed that HSC should not get the benefit of a donation to the Timmonsville School District and that the unclaimed funds should be allocated amongst class members. The Court finds that the tax aspect of the objection is without merit, as HSC will likely get a tax deduction whether it donates to the School District or pays it to class members. Further, the Court recognizes Class Counsel's purpose in including a *cy pres* in the negotiated settlement to encourage efforts to locate class members.

The Court respects that Class Counsel cannot unilaterally change a negotiated term in the settlement to satisfy one class member; and notes that 2,200 other class member have not objected to this arrangement. This objection is therefore overruled.

> Objection 2:    Claim period should commence before July 1, 2001. Objectors: Allen Singletary, Victoria Kelley

Two class members objected on the basis that the claim period should commence before July 1, 2001. Class Counsel noted to the Court that several other class members had verbally articulated this position by telephone. It is undisputed that the claims herein are statutorily limited to (at most) a three-year period by the Fair Labor Standards Act. Therefore, as the damage period is limited by operation of law, and not by the settlement, these objections are overruled.

> Objection 3:    HSC should not have to pay any compensation for changing into and out of uniforms. Objectors: Laurie Fergusen and James Anderson

Both Ms. Ferguson and Mr. Anderson object to HSC having to pay any money, on the grounds that they do not believe anyone is entitled to be paid for time spent changing into and out of uniform. While the concern of these individuals for HSC may be admirable, the Court finds that HSC is represented by competent counsel and has determined that the settlement is in HSC's best interest. Therefore, this objection is overruled.[3]

In sum, the class response has been overwhelmingly favorable, evidencing that they believe the settlement is both fair and adequate and should be approved. As discussed, approximately 81% of the persons who were given the opportunity to join in the settlement have done so. This response bears out this Court's preliminary finding that, "[b]ased upon the submissions of the parties ... the

---

[3]  In any event, Mr. Anderson did not opt in. Therefore even if the Court were to find this objection had merit, his objection could not be considered. *See also Root v. Ames Dep. Stores, Inc.*, 989 F. Supp. 274, 275 (D. Mass, 1997) (potential class member who declined to opt-in lacked standing to object to settlement).

vast number of associates will likely elect to opt in to the settlement and that there will likely be little, if any, opposition to the settlement." *See* Preliminary Order, p. 9.

## Additional Matters

### Spot check review

In the settlement, the parties agreed that up to a maximum amount of $10,000 of the HSC associate settlement funds would be paid to allow for a review of some of the calculations of amounts owed to associates by HSC. Class Counsel has notified the Court that it wishes to have this review performed by Converse Chellis, CPA, of Gamble Givens and Moody in Charleston. The Court hereby approves Mr. Chellis and his firm for the performance of the review. The parties have agreed to work out the parameters and methodology of the review between themselves. Class Counsel will include as part of its final report on the settlement the results of the review.

### Late Opt-ins

The Court has been informed that Class Counsel has received twelve opt-in forms after the deadline of July 8, 2005 but before the Fairness Hearing held July 15, 2005. HSC has indicated that it does not object to the inclusion of these twelve forms. In addition, the parties have agreed that opt-in forms received and post-marked within thirty (30) days of the entry of this Order will be accepted as valid opt-ins; however, by entering into this agreement, HSC specifically does not waive its right to enforce the deadline for appeal of this Order as provided in Rule 60 of the Federal Rules of Civil Procedure.

### Administrative Time

The Court has been informed that HSC may require additional administrative time beyond the deadline for appeal of this Order in order to process and mail the approximately 1,650 checks it will be distributing to class members. The Court finds that the need for this administrative time is

reasonable and will also provide HSC time to correct any errors found by the spot check review by the accountant. Accordingly, HSC shall be allowed up to fifteen (15) days beyond the deadline for any appeal of this Order within which to mail checks to class members. In the event HSC requires additional time beyond this, the Court will allow it an additional fifteen (15) days to complete the distribution of settlement checks.

### Attorney's Fees and Expenses; Class Representative Payments

Lastly, with regards to the settlement of Class Counsel's attorney's fees and expenses, this Court has previously considered and preliminarily approved this provision. The settlement provides that HSC will compensate Class Counsel for their efforts and the expenses advanced by payment of $500,000.00. This payment is in addition to, and not out of funds being paid to class members. This amount is less than 25% of the total cash settlement. As previously noted by the Court, "Class Counsel has obtained an excellent result for the class members and HSC has demonstrated good faith." *See* Preliminary Order, p. 11. The results of the notice process and opt-in collection only magnify this prior conclusion. Notably, no objection to the attorney's fees and expenses was received from any class member. The Court finds that this amount of compensation is fair and reasonable, and therefore is approved.

A similar analysis applies to the approval of the additional payments of $2,000.00 each to the two class representatives. This Court finds that the two class representatives have participated in obtaining a good recovery for the associates and Temps. Accordingly, the Court approves these payments as well.

### Conclusion

Notice to potential class members has been proficiently performed by HSC, with the

9

assistance of Class Counsel.    The response by members opting into the class has been overwhelmingly favorable. The class response has borne out this Court's preliminary finding that this settlement was "fair, reasonable, just and adequate."  *See* Preliminary Order, p. 11.   Final approval is appropriate.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED:**

1.    The proposed settlement agreement filed with this Court on February 2, 2005, as further detailed by this Court's Preliminary Order of February 22, 2005, is deemed fair, reasonable, and adequate and the result of good faith, arms length negotiations;

2.    The objections to the proposed settlement agreement are overruled for the reasons discussed herein;

3.    The proposed settlement agreement is hereby approved with finality;

4.    The parties have agreed, and the Court therefore finds, that opt-ins received and post-marked within thirty (30) days of the entry of this Order shall be considered valid opt-ins, but the deadline for appealing this order is not by this term extended beyond the requisites of Rule 60, Fed. R. Civ.P.;

5.    HSC shall have, if necessary, a total of sixty (60) days from the entry of this Order to cut and mail the settlement checks to class members.   However, HSC has represented that it will endeavor to complete the distribution within forty-five (45) days from the entry of this Order.

6.    HSC shall file with the Court an electronic copy of its tabulation of opt-ins and payments;

7.    Class Counsel shall file an electronic copy of all opt in forms within fifteen (15)

days of the entry of this Order or, if received within thirty days of this Order, as soon as received by Class Counsel;

8.    Class Counsel shall file a brief, final report with the Court documenting the consummation of the settlement and the conclusion of matters relating thereto, including the conclusion of the spot check review portion of the settlement;

**AND IT IS SO ORDERED.**


s/R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge


Florence, South Carolina
August 4, 2005